IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>450 Fifth Street, NW<br>Washington, DC 20549-0911, | : : : : | |
| Plaintiff, | : : | Civil No. |
| v. | : : | |
| MARK W. BLODGETT, and<br>STOCKERYALE, INC. | : : : | |
| Defendants. | : : | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

For its complaint against Mark W. Blodgett ("Blodgett") and StockerYale, Inc. ("StockerYale"), plaintiff the Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1.      This action concerns the publication by StockerYale of a press release in April 2004 containing false and misleading information. As discussed below, the press release: (a) incorrectly stated that StockerYale was developing a customized laser for a missile countermeasure system for commercial planes, and (b) incorrectly implied it was developing the laser pursuant to a Department of Homeland Security ("DHS") project. As set forth below, StockerYale and its Chief Executive Officer Mark Blodgett failed to take adequate steps to ensure the accuracy of the information contained in the press release, thereby causing the dissemination of false and misleading information into the marketplace.

2.     Immediately after publication of the press release, the price and volume of StockerYale common stock surged and Blodgett sold approximately seven percent of his StockerYale holdings.  Within a few days, shares of StockerYale common stock returned nearly sixty-five percent of their gain.

3.     By virtue of their conduct, StockerYale and Blodgett have engaged and, unless enjoined, will continue to engage, in violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

5.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and Section 27 of the Exchange Act [15 U.S.C. §78aa].

6.     Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices and courses of business alleged herein.  Certain of the transactions, acts, practices or courses of business alleged herein took place in the District of Columbia.

## DEFENDANTS AND RELATED PARTIES

7.     Defendant StockerYale is a Massachusetts company headquartered in Salem, New Hampshire.  The company is an independent designer and manufacturer of, among other products, structured light lasers and specialized fiber optic, fluorescent, and light emitting diodes technologies.  The common stock of StockerYale is registered with

the Commission pursuant to Exchange Act §12(g) and is listed on the NASDAQ National Market. Based on the company's public filings, as of March 2004, StockerYale's market capitalization was approximately $19 million.

8.      Defendant Blodgett is the Chairman, Chief Executive Officer and President of StockerYale. Blodgett purchased the majority of the outstanding common shares of StockerYale in 1989. As Chief Executive Officer and President of StockerYale, Blodgett has overseen the day-to-day operations of the company, including the review and publication of major company press releases.

9.      BAE Systems, Inc. ("BAE") is an international company engaged in the development, delivery and support of advanced defense and aerospace systems. The company designs, manufactures and supports military aircraft, surface ships, submarines, fighting vehicles, radar, avionics, communications, electronic and guided weapon systems.

## FACTUAL ALLEGATIONS

10.     In July 2002, StockerYale entered into a contract with BAE (the "July 2002 Contract") pursuant to which StockerYale agreed to deliver reference lasers for BAE's Advanced Threat Infrared Counter Measures ("ATRICM") System, a defense system developed by BAE for the U.S. Army designed to protect military aircraft from infrared guided missiles. Consistent with standard protocol for contracts supporting U.S. military programs, the July 2002 Contract included a Defense Priority and Allocation Requirements ("DPAS") rating.

11.     In connection with the July 2002 Contract, BAE advised StockerYale that the ATRICM system for which the subject lasers would be designed was designated for installation on specific U.S. Army aircraft.

12.     Subsequently, in December 2003, BAE and StockerYale entered into a separate contract (the "December 2003 Contract") pursuant to which StockerYale agreed to produce and deliver to BAE two "repackaged" ATIRCM reference lasers.  Unlike the July 2002 Contract, the December 2003 Contract did not include a DPAS rating.  In addition, BAE did not disclose the identity of its customer, nor did it inform StockerYale how it intended to use the lasers or whether the lasers would support a government program.

13.     In January 2004, Blodgett provided StockerYale's Vice President of Corporate Marketing with a Wall Street Journal Online article featuring BAE's selection by DHS to develop missile defense systems for commercial planes.  Although the article made no mention of StockerYale, Blodgett suggested that StockerYale prepare a press release concerning the award of the December 2003 Contract under the assumption that the Contract was part of the DHS program.  StockerYale was never able to verify that assumption.

14.     Pursuant to BAE's policy requiring review and approval of all communications by its subcontractors prior to dissemination of any public announcement concerning BAE, StockerYale's Vice President of Corporate Marketing e-mailed BAE's communications department expressing StockerYale's desire to issue a press release regarding StockerYale's involvement in BAE's program with DHS.  BAE responded by e-mail, stating only that someone in its contracts department would contact the company.  Although StockerYale sent two e-mails to BAE, no one from BAE responded, and StockerYale did not issue a press release at that time.

15.    In April 2004, StockerYale entered into another contract with BAE (the "April 2004 Contract") for the production and delivery of twenty-one reference lasers in support of BAE's ATIRCM system.  The Request for Proposal ("RFP") preceding the April 2004 Contract stated that the "ATIRCM program is in support of the United States Army Special Operations Group and possibly the United States Navy and Airforce." Moreover, the RFP identified the aircraft for which the lasers would be used.  Finally, the April 2004 Contract included a DPAS rating and stated that "this effort is in support of a U.S. Government Prime Contract."  Thus, in contrast to the December 2003 Contract, in this instance BAE provided StockerYale with detailed information regarding the use of the lasers.

16.    After the April 2004 Contract was finalized, Blodgett determined that StockerYale would issue a press release without submitting it to BAE for approval.

17.    On April 19, 2004, StockerYale issued a press release announcing the December 2003 and April 2004 Contracts (the "April 19 Press Release").  Although the press release accurately referenced the April 2004 Contract as being in support of the ATIRCM system for military aircraft, the release misrepresented the December 2003 Contract by incorrectly stating that StockerYale was "developing a customized laser for a missile countermeasure system for commercial planes under a recent contract received from a unit of BAE."  In fact, the lasers ordered by BAE were not intended for use on commercial planes.

18.    The April 19 Press Release further created the misleading impression that StockerYale was supplying lasers to BAE in support of a DHS program by stating in the very next sentence that BAE was "one of three companies awarded a contract from the

Department of Homeland Security to determine the feasibility of adapting the military missile-defense system for commercial planes." The project for which the lasers were ordered was not in support of BAE's project with the DHS. The press release added emphasis to this misleading impression by including the following Blodgett quote: "[w]e realize the importance and practical implications that such a commercial countermeasure system could have and look forward to supporting BAE on this project."

19.    Within minutes of the publication of the press release, the price and volume of StockerYale's common stock surged. The upward trend continued through the close of trading on April 19 and picked up again at the opening of trading on April 20. At the height of the surge, on April 20, the per share price reached $7.75, more than five times the average closing price for the prior 30 days and $6.30 more than the price at which the stock closed on Friday, April 16. In addition, the volume of shares traded on April 20 was more than 500 times the average daily trading volume for the prior 30 days and more than 100 times the volume on April 16.

20.    On the morning of April 20, Blodgett sold 250,000 shares of StockerYale common stock at $6.56 per share.

21.    By the time the market closed on April 20, StockerYale's per share price dropped back down to $3.74.

22.    After learning of the press release, BAE contacted StockerYale and advised that the order StockerYale received was not pursuant to BAE's DHS program.

23.    On April 21, 2004, StockerYale issued a follow-up press release (the "April 21 Press Release") to provide "additional information with respect to orders received from BAE." Once again, the press release was not submitted to BAE for approval prior to its dissemination.

24.    The April 21 Press Release also contained false and misleading information. The release failed to correct the implication contained in the April 19 Press Release that StockerYale was developing a laser for BAE in support of a DHS project. Further, the press release reiterated the incorrect claim that StockerYale had received an order from BAE related to the development of customized lasers for use on commercial airlines.

25.    Additionally, the April 21 Press Release incorrectly stated that "the contract that BAE has with the U.S. Government calls for deliveries through 2020 and StockerYale expects to receive additional orders under this contract." StockerYale based this assertion on a 2002 BAE-approved press release announcing that StockerYale had been awarded a contract "with the opportunity for long-term deliveries through 2020." However, that press release made no mention of the length of any BAE contract with the U.S. Government. In fact, BAE did not have a contract with the U.S. Government that ran through 2020.

26.    The April 21 Press Release fueled another StockerYale stock surge. Prior to the publication of the press release, shares of StockerYale closed at $3.17 per share on April 21. After publication of the press release, shares of StockerYale opened up nearly fifty percent at $4.81 per share on the morning of April 22.

## CLAIM FOR RELIEF

### (Fraud)

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]

27.    The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 26 above.

28.    Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit the making of materially false and misleading statements in connection with the purchase or sale of a security, to make untrue statements of material fact, omit to state material facts, use any device, scheme or artifice to defraud, or engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.  A person or entity violates these provisions by intentionally or recklessly making material misstatements or omissions in press releases or in other statements disseminated to investors.

29.    The April 19 Press Release was false and misleading in that it incorrectly stated that StockerYale was developing a customized laser for a missile countermeasure system for commercial planes.  In addition, the press release created the misleading impression that StockerYale was supplying lasers in support of a DHS program.

30.    Likewise, although the April 21 Press Release purported to provide the market with "additional information," it failed to clarify that StockerYale was not involved in the DHS program and continued to assert incorrectly that StockerYale was developing a laser with applications for commercial aircraft.

31.    StockerYale and Blodgett knew or were reckless in not knowing that the information contained in the press releases was false and misleading.  Without taking

adequate steps to ensure the accuracy of the information contained in the press releases,
Blodgett directed that the press releases be issued without submitting them to BAE for
approval, thereby causing the dissemination of false or misleading information in the
marketplace.

   32. The surge in price and volume of StockerYale stock following both press
releases demonstrates the materiality of the statements contained in the press releases.

   33. By reason of the foregoing, Defendants have, directly or indirectly, singly
or in concert with others, violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

   WHEREFORE, Plaintiff the Securities and Exchange Commission, respectfully
requests that this Court enter a judgment:

   (1) permanently restraining and enjoining Blodgett, and his agents, servants,
employees, attorneys, and all persons in active concert or participation with him who
receive actual notice of the injunction by personal service or otherwise, and each of them,
from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

   (2) permanently restraining and enjoining StockerYale, and its officers, agents,
servants, employees, attorneys, and all persons in active concert or participation with
StockerYale who receive actual notice of the injunction by personal service or otherwise,
and each of them, from future violations of Section 10(b) of the Exchange Act [15 U.S.C.
§ 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

(3) requiring Blodgett to pay an amount equal to all moneys he obtained through the illegal activities described above plus prejudgment interest thereon, and to pay civil penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

(4) requiring StockerYale, Inc. to maintain comprehensive written policies with respect to corporate ethics, insider trading and public communications; and

(5) granting such other relief as this Court deems just and proper.


Dated: May 24, 2005                    Respectfully Submitted,


                                       _____
                                       Peter H. Bresnan
                                       John Reed Stark (DC Bar #425187)
                                       Thomas A. Sporkin (DC Bar #444865)
                                       David R. Herman (CA Bar #190499)
                                       Sarit Keinan (DC Bar #465509)

                                       Attorneys for Plaintiff
                                       United States Securities
                                       and Exchange Commission
                                       450 Fifth Street, N.W.
                                       Washington, DC 20549-0911
                                       (202) 551-4892 (Stark)