IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | : |
| | : |
| Plaintiff, | : |
| | : Case No. 1:05CV01040 |
| v. | : |
| | : |
| MARK W. BLODGETT and | : |
| STOCKERYALE, INC., | : |
| | : |
| Defendants. | : |
| | : |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PAYMENT OF DIGORGED FUNDS TO THE UNITED STATES TREASURY

The Securities and Exchange Commission submits this memorandum of law in support of its motion for an order directing the payment of funds disgorged by Defendant Mark W. Blodgett ("Blodgett") to the United States Treasury.

### Factual Background

This case concerns the publication by StockerYale, Inc. ("StockerYale") of two press releases containing false and misleading information. On April 19, 2004, StockerYale, a publicly traded designer and manufacturer of structured light lasers, issued a press release at the direction of its Chief Executive Officer, Defendant Blodgett. The press release incorrectly stated that StockerYale was developing a customized laser for a missile countermeasure system for commercial planes and implied it was developing the laser pursuant to a project

with the Department of Homeland Security ("DHS").  Within

minutes of the publication of the press release, the price and

volume of StockerYale's common stock surged.  Near the height of

the surge, Blodgett sold approximately seven percent of his

StockerYale holdings.  On April 21, 2004, StockerYale issued a

follow-up press release purportedly providing additional

information regarding its laser contract.  The press release,

however, failed to correct the implication contained in the

April 19 press release that StockerYale was developing a laser

in support of a DHS project and reiterated the incorrect claim

that the laser was being developed for use on commercial planes.

On May 24, 2005, the SEC filed its complaint for injunctive

relief, disgorgement and civil penalties against Blodgett and

StockerYale for violations of the Securities Exchange Act of

1934 and Rule 10b-5 thereunder.  The complaint alleged that

Blodgett and StockerYale failed to take adequate steps to ensure

the accuracy of the information contained in the press releases,

thereby causing the dissemination of false and misleading

information into the securities markets.  Without admitting or

denying the allegations of the complaint, Blodgett and

StockerYale consented to the entry of injunctions permanently

enjoining each from violating the Exchange Act's antifraud

provisions.  In addition, Blodgett consented to pay disgorgement

in the amount of $754,877, plus prejudgment interest, and a
civil penalty in the amount of $120,000.

The consent judgments contemplated that the SEC could
propose a plan for the Court's disposition of the disgorged
funds, with the proviso that in no event would the funds revert
to the Defendants.  By the instant motion, the SEC respectfully
requests that the Court enter an order directing that the
disgorged funds be paid into the United States Treasury.
Although it is the SEC's policy whenever possible to recommend a
distribution plan by which a defendant's unlawful gains are paid
out to the defrauded investors, as explained below, the facts
and circumstances of this case make it impracticable to identify
the injured parties with demonstrable claims.

### Argument

#### I.    Disgorgement Serves Not to Compensate Investors But to Deprive the Violator of Unjust Enrichment

It is well-settled that the primary purpose of disgorgement
is not to compensate investors but rather "to force a defendant
to relinquish the amount by which he was unjustly enriched."
See SEC v. Bilzerian, 814 F. Supp. 116, 123 n.18 (D.D.C. 1993),
aff'd, 29 F.3d 689 (D.C. Cir. 1994), quoting SEC v. Blavin, 760
F.2d 706, 713 (6th Cir. 1985); SEC v. First City Financial Corp.,
688 F. Supp. 705, 726 (D.D.C. 1988) ("[d]isgorgement as an
equitable remedy is designed to compel defendants to give up the

- 3 -

amount by which they were unjustly enriched."); <u>SEC v. Drexel</u>
<u>Burnham Lambert, Inc.</u>, 956 F. Supp. 503, 507 (S.D.N.Y. 1997)
("The disgorgement remedy is not intended to compensate
investors; rather, it is intended to deprive the violator of
unjust enrichment, thereby furthering the deterrence objectives
of the securities laws."); <u>accord</u> <u>SEC v. Commonwealth Chemical</u>
<u>Securities, Inc.</u>, 574 F.2d 90, 102 (2d Cir. 1978) ("the primary
purpose of disgorgement is not to compensate investors.  Unlike
damages, it is a method of forcing a defendant to give up the
amount by which he was unjustly enriched.").

Thus, once it has been established that a defendant has
violated the securities laws, "the district court possesses the
equitable power to grant disgorgement without inquiring whether,
or to what extent, identifiable private parties have been
damaged by [the] fraud."  <u>See</u> <u>SEC v. Tome</u>, 833 F.2d 1086, 1096
(2d Cir. 1987), <u>quoting</u> <u>SEC v. Blavin</u>, 760 F.2d at 713.
"Whether or not any investors may be entitled to money damages
is immaterial."  <u>Id.</u>

After the defendants have disgorged their illegal profits,
the Court must then make an equitable distribution of the funds.
<u>SEC v. Drexel</u>, 956 F. Supp. at 507; <u>SEC v. Fischbach Corp.</u>, 133
F.3d 170, 175 (2d Cir. 1997) ("[o]nce the profits have been
disgorged, it remains within the court's discretion to determine
how and to whom the money will be distributed…").  Where

- 4 -

appropriate, the SEC asks that the money be distributed to the victims of the securities violation.  SEC v. Drexel, 956 F. Supp. at 507.  However, such a distribution is not mandated by statute and may not always be feasible where, for example, "numerous victims suffered relatively small amounts…; where the victims cannot be identified…; [or] where there are no victims entitled to damages."  Id. quoting SEC v. Lorin, 869 F. Supp. 1117, 1129 (S.D.N.Y. 1994).  In such cases, the disgorged funds are paid to the Treasury.  Id.

## II. A Distribution Plan to Investors is Impracticable In This Case and the Court Should Therefore Direct That the Disgorged Funds Be Paid Into the Treasury

In the instant case, a distribution to investors would not be feasible because of the difficulty in identifying injured parties with demonstrable claims.  Specifically, because StockerYale never issued a corrective disclosure clarifying the misinformation contained in the press releases, defining the period of the fraud with any measure of certainty would be difficult, if not impossible.  Indeed, the fraud period arguably could extend from April 19, 2004 - - the date on which the first press release was issued - - to the date of the filing of the complaint in this action, May 24, 2005.  Even assuming the SEC could fashion a narrow period of the fraud for purposes of a distribution plan, the average payout to each investor likely would be relatively small.

Based on a review of the trading records, more than 9,000 potential claimants traded in StockerYale stock between April 19, 2004 and April 21, 2004 alone. In addition, over 90 million shares of StockerYale stock were traded during the week of the press releases. In light of the time, resources and expenses that would be incurred in determining a defined class of injured investors - - plus the administrative expenses associated with a distribution plan - - a public distribution of the disgorged funds to investors would neither be feasible nor appropriate.

The preferable alternative to a distribution to investors would be the entry of an order directing that the funds be paid to the United States Treasury. This is frequently done in SEC cases. See e.g., SEC v. Fischbach Corp., 133 F.3d at 175 (affirming district court's distribution to Treasury where persons who might have equitable claims were too dispersed for feasible identification and payment); SEC v. Lange, 2002 WL 475130 at *1 (E.D. Pa., March 28, 2002) (disgorgement fund paid to Treasury where it would be difficult and costly to identify investors who traded in stock on seven days at issue); SEC v. Courtois, 1985 WL 489 (S.D.N.Y., Apr. 11, 1985) (approving proposal to pay disgorgement fund to Treasury in light of difficulty of identifying potential claimants and likelihood of only nominal distribution); SEC v. Zubkis, 2001 U.S. Dist. LEXIS 24011 at *8-9 (S.D.N.Y., July 12, 2001) (ordering defendant to

- 6 -

disgorge over $7 million to Treasury in connection with material misrepresentations made to investors); SEC v. Pandolfino, 1992 U.S. Dist. LEXIS 7505 (D.D.C., May 26, 1992) (defendant in stock manipulation case ordered to disgorge funds to Treasury).

### Conclusion

For the reasons stated above, the SEC respectfully requests that the Court order that the funds paid by Defendant Blodgett, plus interest on deposit in this case, less the registry fee assessment, be paid to the United States Treasury.


Dated: October 31, 2005          Respectfully Submitted,



Peter H. Bresnan
John Reed Stark (DC Bar #425187)
Thomas A. Sporkin (DC Bar #444865)
David R. Herman
Sarit Keinan (DC Bar #465509)
Attorneys for Plaintiff
United States Securities
and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5631
(202) 551-4892 (Stark)